**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **VIORICA BUDEANU and GV AGENCY, INC.,** | |
| **Plaintiffs,** | **CIVIL ACTION FILE** |
| **v.** | **No. 1:22-CV-4413-SCJ** |
| **ALLSTATE INSURANCE COMPANY,** | |
| **Defendant.** | |

## O R D E R

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. [2]. Plaintiffs have filed a response in opposition (Doc. No. [13]), and Defendant has filed a reply brief (Doc. No. [17]). The motion is now ripe for review by the Court.

## I.     BACKGROUND

The Court draws facts primarily from the Complaint (Doc. No. [1-1]), accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1056

(11th Cir. 2007). On June 1, 2016, Allstate and Viorica Budeanu entered into the Allstate R3001S Exclusive Agency Agreement (the "Agency Agreement").[1] Doc. No. [1-1], ¶ 7. The Agency Agreement provided that Ms. Budeanu was an Allstate Exclusive Agent ("EA"); she owned and operated an Allstate agency, GV Agency, Inc. in DeKalb County, Georgia. Id., ¶ 8. Under the terms of the Agency Agreement, Ms. Budeanu was an independent contractor who sold insurance policies on behalf of Allstate. Id., ¶ 9. In exchange for her sale of policies, Ms. Budeanu earned a commission and developed a book of business. Id. The Agency Agreement incorporated by reference other documents including: the Exclusive Agency Independent Contractor Manual, the Supplement for the R3001 Agreement, and the Allstate Agency Standards. Id., ¶ 12. The Complaint collectively refers to the Agency Agreements and these incorporated documents as the "EA Contract." Id., ¶ 11.[2]

---

[1] The Court notes that all references to the "Agency Agreement" in this Order are to the R3001S agreement between Ms. Budeanu and Allstate. There is a separate agreement between GV and Allstate that was executed the same day. The Court refers to this agreement as the R3001C Agreement. The parties dispute whether the Agency Agreement was superseded by the R3001C Agreement. This issue is not ripe for resolution by the Court at this time.

[2] The Agency Agreement is attached to the Complaint as Exhibit 1. Doc. No. [1-1].

The EA Contract provided that Ms. Budeanu has the right to sell her economic interest in her book of business to an approved buyer or to receive a termination payment from Allstate. <u>Id.</u>, ¶ 14. The EA Contract further provided that if the Agency Agreement was terminated, Ms. Budeanu would have 90 days to find a buyer who was approved by Allstate, reach an agreement and close the sale of her book of business. <u>Id.</u>, 15. If she failed to close a sale to an approved buyer within the 90-day timeframe, she would receive a termination payment. <u>Id.</u> According to Plaintiffs, the EA Contract states that Allstate's involvement in any such sale is limited to approving or denying approval of the buyer. <u>Id.</u>, ¶¶ 16, 17.

As an EA, Ms. Budeanu was eligible to purchase another EA's book of business, subject to Allstate's approval. <u>Id.</u>, ¶¶ 18, 19. According to the EA Contract, approval of a sale of a book of business from one EA to another is based on objective criteria as to whether the purchaser is qualified. <u>Id.</u>, ¶ 19.

Plaintiffs allege that the objective criteria are stringent such that most EAs never meet the qualifications to purchase another book of business. <u>Id.</u>, ¶ 20.

_____

However, the additional documents that are incorporated by reference are not attached to the Complaint.

Plaintiffs further allege that Allstate made it known to its agents that it would refuse to consider almost any sale of a book of business to another EA even if the purchasing EA met Allstate's objective criteria. Id., ¶ 21. The result, Plaintiffs contend, is that EAs desiring the sell their books of business are forced to do so at a price significantly below market price. Id., ¶ 22.

According to the Complaint, Ms. Budeanu satisfied the objective criteria to be a purchasing EA, and in 2018 and 2019, she sought approval from Allstate to purchase two books of business from other EAs. Id., ¶ 25. The process required her to submit her documentation for approval to her Field Sales Leader, Karen Thompson, which she did. Id., ¶¶ 26, 27. According to Plaintiffs, Ms. Thompson deliberately ignored the submissions. Id.,¶ 28.

Plaintiffs further allege that Ms. Thompson began harassing Ms. Budeanu and sought to undermine Ms. Budeanu's relationship with her own employees. Id., ¶¶ 30, 31. In one instance, Ms. Thompson ignored messages from Ms. Budeanu related to a need to refund money inadvertently received by GV from a customer not affiliated with GV. Id., ¶ 32. Plaintiffs allege that Ms. Thompson intentionally ignored the messages, knowing that regulations of the Financial Industry Regulatory Authority did not allow GV to retain the funds for more

4

than 72 hours. <u>Id.</u>, ¶ 33. As a result, Ms. Budeanu had to escalate the issue to Allstate's regional leader on Christmas morning 2019 to address the emergency. <u>Id.</u>, ¶ 34. Over the next year, Ms. Thompson refused to work with Ms. Budeanu at all, and even directed Ms. Budeanu's employees to contact her directly. <u>Id.</u>, ¶ 39.

Despite Ms. Budeanu's complaints regarding the harassment, Allstate never disciplined Ms. Thompson. <u>Id.</u>, ¶ 41. And Ms. Budeanu's regional manager, Eric Stone, threatened to terminate the Agency Agreement if Ms. Budeanu lodged more complaints about Ms. Thompson's actions. <u>Id.</u>, ¶ 42.

Within days of Ms. Budeanu's complaints about Ms. Thompson, Ms. Budeanu learned that Allstate was investigating a customer file handled by GV. <u>Id.</u>, ¶ 43. Plaintiffs allege that Allstate initiated a baseless investigation in retaliation for Ms. Budeanu's complaints about Ms. Thompson and about Allstate software issues. <u>Id.</u>, ¶ 44. Additionally, Plaintiffs allege that the purpose of the investigation was to create a pretext for terminating the Agency Agreement and to force Ms. Budeanu to sell her book of business at a price below fair market value. <u>Id.</u>, ¶ 45.

5

In January 2021, Ms. Budeanu voluntarily meet with an Allstate representative remotely, where she learned that the investigation related to a declarations page provided by a customer that Allstate determined was not authentic. Id., ¶¶ 46, 47. At some point after the meeting, Ms. Budeanu learned that the person she met with was counsel for Allstate. Id., ¶ 46. She heard nothing further about the investigation or its outcome for several months. Id., ¶ 48.

Meanwhile, in February 2021, Ms. Budeanu received a $150,000 bonus from Allstate. Id., ¶ 49. In March 2021, she submitted a request to Allstate to purchase an existing EA's book of business. Id., ¶ 50. The EA who was selling his book of business was Daniel White; his agency was located about three miles from GV. Id., ¶ 51.

In April 2021, Mr. Stone told Ms. Budeanu that she had qualified as an approved buyer of additional agencies and that she should move forward in negotiations for those purchases. Id., ¶ 52. He did not inform Ms. Budeanu that she remained under investigation or that the investigation revealed misconduct on the part of Plaintiffs. Id., ¶ 54. According to Plaintiffs, Ms. Budeanu satisfied all objection criteria to purchase another EA's book of business. Id., ¶ 53.

Plaintiffs allege that in reliance upon Allstate's assurance that she was an eligible purchase of other agencies, Ms. Budeanu began negotiating with Mr. White and took financial steps to her detriment. <u>Id.</u>, ¶ 55. Yet, according to Plaintiffs, Allstate already knew it would never approve Ms. Budeanu's purchase of another agency. <u>Id.</u>, ¶ 56. Specifically, Plaintiffs allege that Ms. Thompson told Mr. White that Allstate would never approve Ms. Budeanu's purchase of his agency. <u>Id.</u>, ¶ 57.

On May 26, 2021, Mr. Stone and Ms. Thompson called Ms. Budeanu to inform her that Allstate was terminating the Agency Agreement. <u>Id.</u>, ¶¶ 61, 62. Without receiving written termination of the agreement or any explanation for the reason the Agency Agreement was being terminated, Ms. Budeanu was required to vacate her office by close of business the same day. <u>Id.</u>, ¶ 64. According to Plaintiffs, despite requiring Ms. Budeanu to vacate the office space, Allstate refused to transfer the telephone system, resulting in her fielding hundreds of calls from Allstate customers without any compensation. <u>Id.</u>, ¶ 81. Additionally , the unexpected termination of the Agency Agreement caused GV to terminate its lease prematurely, resulting in costs. <u>Id.</u>, ¶ 82.

On July 7, 2021, Ms. Budeanu received a letter dated May 27, 2021 terminating the Agency Agreement. Id., ¶ 66. The letter stated that the termination was based on providing false information to the company, but did not specify what information it referred to or any other details. Id., ¶ 67. All efforts by Ms. Budeanu to obtain documentation in support of Allstate's explanation for termination of the contract has been fruitless. Id., ¶ 85.

The termination letter further informed Ms. Budeanu that she may have the option of receiving a termination payment from Allstate or of selling her economic interest to an Allstate approved buyer. Id., ¶ 70. The date of September 1, 2021 was provided as the deadline for completing any sale of her book of business. Id., ¶ 71.

Ms. Budeanu was sent another letter dated May 28, 2021 demanding that she repay the $150,000 bonus she had received. Id., ¶ 72. Ms. Budeanu complied with the demand to repay the bonus for fear that Allstate would not approve her sale of her book of business. Id., ¶ 77. Ultimately, Allstate approved the sale of Ms. Budeanu's book of business to another existing EA. Id., ¶ 76. Plaintiffs allege that the sale price of $850,000 for Ms. Budeanu's book of business was substantially below the fair market value. Id., ¶ 73.

8

Plaintiffs filed this action in the Superior Court of Gwinnett County setting forth the following causes of action: breach of contract (Counts I and II); breach of implied covenant of good faith and fair dealing (Count III); breach of fiduciary duties (Count IV); fraudulent misrepresentation (Count V), and unjust enrichment (Count VI). Doc. No. [1-1]. Defendant removed this action to this Court on the basis of the diversity jurisdiction. Doc. No. [1].

## II.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks omitted and alteration adopted). Rule 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form and must be construed "so as to do justice." Fed. R. Civ. P. 8(d)(1), (e).

A defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint has failed

9

to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 555 U.S. 662, 687 (2009); Twombly, 550 U.S. at 561–62, 570. Labels, conclusions, and formulaic recitations of the elements of the cause of action "will not do." Twombly, 550 U.S. at 555. To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted).

## III.   ANALYSIS

### A.   **Breach of Contract Claims**

Plaintiffs' breach of contract claims are based on the Agency Agreement between Allstate and Ms. Budeanu, which is attached to the Complaint as Exhibit 1. Doc. No. [1-1]. In the Motion to Dismiss, Defendant argues that this agreement was superseded by an Allstate R3001C Exclusive Agency Agreement (the

"R3001C Agreement") between Allstate and GV, which it has attached to the motion as Exhibit A. Doc. No. [2-2].[3] As a result, according to Defendant, the Agency Agreement cannot form the basis of breach of contract claims.

In response, Plaintiffs point out that both agreements were executed on the same date. Doc. No. [13], at 4. Therefore, they argue, the Court cannot determine whether the R3001C Agreement supersedes the Agency Agreement at this stage of the litigation. Alternatively, Plaintiffs argue that even if the R3001C Agreement is the operative agreement, it contains provisions requiring GV to employ Ms. Budeanu to provide services under the agreement. Id. Further, Plaintiffs point out that Allstate required Ms. Budeanu to execute the restrictive covenants annexed to the R3001C Agreement in her individual capacity. Id. Thus, Plaintiffs conclude, "there is no basis whatsoever for Defendant to claim that Ms. Budeanu cannot maintain a contractual claim even under the purportedly superseding version of the Agency Agreement." Id. at 5.

---

[3] The Court notes that the R3001C Agreement is not one of the documents that was incorporated into the Agency Agreement by reference, and thus not part of what Plaintiffs define as the EA Contract. See Ex. 1, § I.D. Doc. No. [1-1] at 28.

The Court agrees with Plaintiffs that it cannot, at this stage, ascertain whether the Agency Agreement underpinning Plaintiffs' breach of contract claims was superseded by the R3001C Agreement because it appears that both documents were executed on the same date. The provision in the R3001C Agreement relied upon by Defendant states that "it supersedes and replaces any prior employment, agency, or other agreement between the Company and Agency and any of its officers, directors, shareholders, members, and employees." Ex. A at §I.B Doc. No. [2-2]. Because both agreements were executed on the same date, there remains a question as to whether the Agency Agreement was a **prior** agreement to the R3001C Agreement.

Plaintiffs' alternative arguments are without merit. The Complaint does not allege any claims based on the R3001C Agreement, and Plaintiffs cannot amend their Complaint through arguments made in response to the Motion to Dismiss. When the Court is considering a Rule 12(b)(6) motion, it generally cannot consider new factual allegations not contained in the complaint. See Bruce v. U.S. Bank Nat'l Ass'n, 770 F. App'x 960, 964 (11th Cir. 2019) (quoting Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)); Five for Ent. S.A. v. Rodriguez, 877 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (finding that plaintiffs

12

erred by attempting to supplement factual allegations via a response brief to a motion to dismiss and instead should have placed those allegations in a pleading). Therefore, in addressing the merits of the Motion to Dismiss, the Court will consider the Agency Agreement between Ms. Budeanu and Allstate, not the R3001C Agreement.

1.    *Wrongful Termination (Count I)*

In the Complaint, Plaintiffs allege that Allstate breached the terms of the Agency Agreement by terminating it without cause and by failing to do so by written notice. Doc. No. [1-1], ¶ 92, 93. They further allege that Plaintiffs were harmed as a result. Id., ¶ 94.

Defendant moves to dismiss the claims, arguing that Plaintiffs have offered only conclusory allegations without factual support. Also, Defendant contends that the claims are contradicted by other allegations in the Complaint and by documentary evidence attached to the Complaint.

Section XVIIB(3) of the Agency Agreement provides that "with cause" Allstate can immediately terminate the agreement upon providing written notice to Ms. Budeanu. Doc. No. [1-1], at 35. It further states, "Cause may include, but is not limited to, breach of this Agreement, fraud, forgery, misrepresentation or

13

conviction of a crime. The list of examples of cause just stated shall not be construed to exclude any other possible ground as cause for termination." <u>Id.</u> Plaintiffs allege specific facts regarding Ms. Budeanu's ongoing difficulties with Ms. Thompson, her efforts to lodge complaints with Allstate, and the responses thereto—culminating in the  allegation that the reason provided by Allstate for terminating the Agency Agreement was pretext, resulting in termination in the absence of cause. Doc. No. [1-1], ¶¶ 28, 30-37, 39-45, 47, 57, 60, 62-65. Moreover, to the extent Defendant relies on the Termination Letter attached to the Complaint, that letter specifies that it is giving notice that Allstate is terminating the R3001C Agreement with GV, not the Agency Agreement with Ms. Budeanu.[4] Therefore, that letter is not applicable to the breach of contract claims pertaining to the Agency Agreement.[5]

---

[4] The Court acknowledges that Plaintiffs' Complaint is not a model of clarity on this issue. She alleges that the Termination Letter, attached to the Complaint as Exhibit 2, stated that the termination was "pursuant to Section XVII.B.3 of the [Agency] Agreement . . . ." Doc. No. [1-1] at ¶ 67. But on its face, the Termination Letter refers to the R3001C Agreement between GV and Allstate. Doc. No. [1-1] Ex. 2. Nevertheless, the allegation in the Complaint is that the Agency Agreement was terminated verbally on May 26, 2021. Doc. No. [1-1], ¶ 62.

[5] Defendant provides an exhibit showing that the Termination Letter was emailed to Ms. Budeanu on May 26, 2021. Doc. No. [2-3]. While this exhibit goes to Ms. Budeanu's contention that she was not provided notice in writing until 45 days later, the

Because Plaintiffs have alleged specific facts to support the breach of contract claim related to the wrongful termination of the Agency Agreement, there is no basis for dismissal of that claim.[6]

### 2. *Interference with Purchase (Count II)*

In the Complaint, Plaintiffs allege that the EA Contract states that Allstate's involvement in any sale of an agent's book of business is limited to solely approving or denying the sale.[7] Doc. No. [1-1], ¶ 16. They further allege that Ms. Budeanu had satisfied the objective criteria to be a purchaser of another agent's book of business when Mr. Stone informed her that she was an eligible purchaser of additional agencies and urged her to move forward with negotiations to make such purchase and failed to inform her that she was under investigation for misconduct. Id., ¶¶ 52 - 54. The Complaint goes on to assert that Ms. Budeanu

_____

Defendant's reliance on it fails because the Termination Letter specifies that is notifying Ms. Budeanu of the termination of the R3001C Agreement, not the agreement upon which she basis her breach of contract claims.

[6] The Court questions whether GV has stated a claim for breach of contract under the Agency Agreement because it is not a party to that agreement. However, Defendant has not moved to dismiss GV's claims on this ground, and the Court will not do *so sua sponte*.

[7] While Plaintiff attached the Agency Agreement to the Complaint, the additional documents that are incorporated by reference and comprising what Plaintiff collectively refer to as the "EA Contract" are not attached.

took financial actions in reliance on Mr. Stone's assurances and directions to move forward. <u>Id.</u>, ¶ 55. Finally, Plaintiffs allege that Allstate knew it would never approve Ms. Budeanu's purchase of another agency and told Mr. White, whose agency Ms. Budeanu was negotiating to purchase, that it would not approve the sale. <u>Id.</u>, ¶¶ 56, 101. Thus, Plaintiffs allege that Allstate directly interfered with her efforts to purchase Mr. White's book of business in breach of the EA Contract. <u>Id.</u>, ¶ 102.

In moving to dismiss, Defendant argues that nothing in the Agency Agreement obligates Allstate to approve Plaintiffs' purchase of another agency. This argument misconstrues what Plaintiffs have alleged constituted a breach of the EA Contract. They do not allege that failure to approve the sale of Mr. White's book of business to Ms. Budeanu was a breach. Rather, Plaintiffs allege that the EA Contract provided that Allstate would not interfere in the process of one EA purchasing a book of business form another EA, but in the instance of her efforts to purchase Mr. White's agency, Allstate interfered by misrepresenting to her that she was eligible to purchase while telling Mr. White that Allstate would not approve the sale. <u>Id.</u>, ¶¶ 16, 17, 57, 59.

16

Because Plaintiffs have alleged specific facts to support the breach of contract claim by Ms. Budeanu[8] related to interference with her attempt to purchase a book of business from Mr. White there is no basis for dismissal of that claim.[9]

### C.       Breach of Implied Duty of Good Faith & Fair Dealing (Count III)

In the Complaint, Plaintiffs allege that Allstate breached its duty to exercise its discretion in good faith and honest judgment by terminating the Agency Agreement for baseless, arbitrary, and capricious reasons. Doc. No. [1-1], ¶ 112. Defendant moves to dismiss the claim, arguing that because Plaintiffs' breach of contract claim at Count I fails, they cannot state a claim for breach of the implied duty of good faith and fair dealing. Doc. No. [2-1], at 14.

---

[8] The Court questions whether GV has stated a claim for breach of contract under the Agency Agreement because it is not a party to that agreement. However, Defendant has not moved to dismiss GV's claims on this ground, and the Court will not do *so sua sponte*.

[9] Defendant additionally argues that in Count II, Plaintiffs failed to state a claim for tortious interference with contract. Doc. No. [2-1], at 11. However, there is no indication in the Complaint that Plaintiffs seek to bring a claim for tortious interference with contract. Moreover, Plaintiffs confirm in response to the Motion to Dismiss that they have not asserted a tortious interference with contract claim. Doc. No. [13], at 10. Therefore the Court will not address Defendant's argument on this issue.

17

As set forth in Section III.A *supra*, Plaintiffs breach of contract claim regarding the termination of the Agency Agreement is sufficient to survive the motion to dismiss. Accordingly, the claim for breach of the implied duty of good faith and fair dealing is not subject to dismissal.[10]

### D.   Breach of Fiduciary Duty (Count IV)

In the Complaint, Plaintiffs allege that under the Agency Agreement, Ms. Budeanu was appointed as Allstate's "agent to represent the Company in the Exclusive Agency Program." Doc. No. 1-1, ¶ 116. Additionally, Plaintiffs allege that the Agency Agreement expressly provides that Ms. Budeanu, as an agent of Allstate, was authorized to enter into contracts of insurance and other contracts as expressly authorized by the agreement. Id., ¶ 117. Thus, according to Plaintiffs, a fiduciary relationship existed between Plaintiffs and Allstate, and Allstate owed them fiduciary duties of good faith, fidelity, and loyalty. Id., ¶¶ 118, 119.

In Count IV, Plaintiffs assert that Allstate breached its fiduciary duties by initiating a baseless investigation into Plaintiffs in retaliation for Ms. Budeanu's

---

[10] The Court questions whether GV has stated a claim for breach the implied duty of good faith and fair dealing because it is not a party to the agreement that Plaintiffs allege was breached. However, Defendant has not moved to dismiss GV's claims on this ground, and the Court will not do *so sua sponte*.

complaints, having a blanket policy of refusing to consider Ms. Budeanu's request to purchase another EA's book of business, interfering with Ms. Budeanu's efforts to purchase Mr. White's book of business, and terminating the Agency Agreement for baseless, arbitrary, and capricious reasons. Id., ¶ 120. In the Motion to Dismiss, Defendant argues that the Complaint does not contain facts sufficient to plausibly suggest that Allstate owed Plaintiffs a fiduciary duty or breached a fiduciary duty.

Under Georgia law, a claim for breach of fiduciary duty is comprised of three elements: "(1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damage proximately caused by the breach." Bailey v. Stonecrest Condo. Ass'n, Inc., 304 Ga. App. 484, 494, 696 S.E.2d 462, 470 (2010). A fiduciary relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent. . . ." O.C.G.A. § 23-2-58. A fiduciary relationship may be created by law, contract, or the facts of a case. Thunderbolt Harbour Phase II Condo. Ass'n, Inc., v. Ryan, 326 Ga. App. 580, 581-82, 757 S.E.2d 189, 191 (2014).

Here, Plaintiffs have alleged facts which raise plausible inferences that Allstate was situated to exercise a controlling influence over Ms. Budeanu's interests in purchasing another EA's book of business as well the discretion to decide what is "cause" for termination of the Agency Agreement. Furthermore, Plaintiffs alleged that Allstate created a pretext for terminating the Agency Agreement as well as intentionally misleading her about the potential to purchase Mr. White's book of business. Finally, Plaintiffs have alleged that Ms. Budeanu was damaged by Allstate's actions. Therefore, Plaintiffs has alleged facts sufficient to survive the Motion to Dismiss the breach of fiduciary duty claim with respect to Ms. Budeanu. However, Plaintiffs' allegations fail to raise any inference that a breach of a fiduciary duty owed by Allstate to GV resulted in damage to GV. Therefore, GV's claim for breach of fiduciary duty is subject to dismissal.

### E.   Fraudulent Misrepresentation (Count V)

In Count V of the Complaint, Plaintiffs allege that in April 2021, Allstate, via Mr. Stone, told Ms. Budeanu that she met eligibility requirements to purchase additional agencies while knowing it would not approve the purchase of any additional agencies in order to stop Ms. Budeanu from lodging complaints

against her superiors. Doc. No. [1-1], ¶¶ 52, 125 – 127. They further allege that in reliance on the misrepresentation, Ms. Budeanu took several financially detrimental steps in her efforts to purchase Mr. White's book of business. Id., ¶ 128.

In the Motion to Dismiss, Defendant contends that the fraudulent misrepresentation claim fails for lack of specificity. Doc. No. 2-2, at 16. To allege a viable fraud claim under Georgia law, Plaintiffs must allege (1) a false representation by Defendant; (2) Defendant's knowledge that the information was false (scienter); (3) Defendant's intention to induce Plaintiffs to act or to refrain from acting; (4) justifiable reliance by Plaintiffs; and (5) damage to Plaintiffs. Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1288 (11th Cir. 2007) (citing Avery v. Chrysler Motors Corp., 214 Ga. App. 602, 604, 448 S.E.2d 737, 739 (1994)). Fraudulent misrepresentation claims are subject to Rule 9(b), which requires a party "alleging fraud" to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see, e.g., Quashie v. Olympus Am., Inc., 315 F. Supp. 3d 1329, 1340 (N.D. Ga. 2018) (applying Rule 9(b) to fraudulent misrepresentation claim). "To satisfy this standard, the plaintiff must allege: (1) the precise statements, documents, or

21

misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." <u>Desouza v. Fed. Home Mortg. Corp</u>., 572 F. App'x 719, 722 (11th Cir. 2014); <u>see</u> <u>Dixon v. Green Tree Servicing, LLC</u>, 2021 WL 2182037, at *4 (11th Cir. May 28, 2021) (same). In other words, the complaint must "allege[ ] facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." <u>U.S. ex rel. Matheny v. Medco Health Sols., Inc</u>., 671 F.3d 1217, 1222 (11th Cir. 2012). This heightened pleading standard serves the dual purpose of "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." <u>Inman v. Am. Paramount Fin</u>., 517 F. App'x 744, 748 (11th Cir. 2013).

With respect to a claim by Ms. Budeanu, the Court finds that the facts alleged are pled with sufficient particularity to state a claim for fraudulent misrepresentation. Indeed, Plaintiffs allege that Mr. Stone knowingly misled Ms. Budeanu as to the viability of a purchase of another agency by telling her she was an eligible buyer and encouraging her to negotiate a deal all while knowing that

any such deal would never receive approval; this alleged misrepsentation was made for the purpose of curtailing Ms. Budeanu's complaints about superiors, and Ms. Budeanu took deterimental financial steps in reliance on the alleged misrepresentation. Turning to GV, however, there are no allegations specific to GV's about an alleged misrepresentation or its reliance thereon. Therefore, the Count V as to GV is subject to dismissal.

### F.  Unjust Enrichment (Count VI)

In Count VI of the Complaint, Plaintiffs allege that for several weeks after Allstate terminated the Agency Agreement, it refused to properly transfer the phone system from GV to Allstate. Doc. No. [1-1], ¶ 135. This, according to Plaintiffs, resulted in Ms. Budeanu fielding numerous calls from Allstate customers, an activity for which she was not compensated. Id.

Defendant moves to dismiss Count VI, arguing that the existence of a valid contract precludes a claim for unjust enrichment. Doc. No. [2-1], at 18. Additionally, Defendant argues that the Complaint fails to allege that Allstate was unjustly enriched. There is clearly no merit to Defendants' initial argument, as Plaintiff's allegations reflect that the activities her unjust enrichment claim are

based upon occurred after the Agency Agreement was terminated. However, Defendant's second argument requires consideration.

A claim for unjust enrichment exists where a plaintiff asserts that a defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it. Collins v. Athens Orthopedic Clinic, 356 Ga. App. 776, 778, 849 S.E.2d 213, 216 (Ga. App. 2020). Here, Plaintiffs make no allegation of how Ms. Budeanu fielding calls benefitted Allstate. Furthermore, they fail to allege any facts leading to an inference that Allstate induced or encouraged Ms. Budeanu to field the calls or that Plaintiffs expected any recompence from Allstate because of Ms. Budeanu's time answering calls. Accordingly, Plaintiffs' unjust enrichment claim is subject to dismissal.

24

G.     **Attorneys' Fees**

In the Complaint, Plaintiffs seek attorneys' fees and other expenses of litigation pursuant to O.C.G.A. § 13-6-11. Doc. No. [1-1], ¶ 136(2). Defendant moves to dismiss, arguing that Plaintiffs offer only conclusory allegations, which are not entitled to a presumption of truth. Doc. No. [2-1], at 20.

O.C.G.A. § 13-6-11 authorizes an award of attorneys' fee  and other expenses of litigation where the request is specifically pled and "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." A request for attorneys' fees under § 13-6-11 is considered specifically pled if it references the statute "or the criteria set forth therein." <u>Dep't of Transp. v. Ga. Television Co.</u>, 244 Ga. App. 750, 752, 536 S.E.2d 773, 776 (2000). Here, Plaintiffs' claim for litigation expenses is supported by their allegations of bad faith by Defendants that are throughout the surviving claims. Accordingly, the claim for litigation expenses is not subject to dismissal.

**IV. CONCLUSION**

Based on the foregoing, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss. Doc. No. [2]. The Motion is

25

GRANTED as to GV's breach of fiduciary duty and fraudulent misrepresentation claims and both Plaintiffs' unjust enrichment claim. The Motion to Dismiss is otherwise DENIED.

      **IT IS SO ORDERED** this 9th day of August, 2023.

/s/ Steve C. Jones
**HONORABLE STEVE C. JONES**
**United States District Judge**